STATE OF NORTH CAROLINA v. TERRY WAYNE WEEKS

No. 777A85

(Filed 5 May 1988)

**1. Jury § 6— murder prosecution—individual voir dire denied—no error**

The trial court did not abuse its discretion in a murder prosecution by denying defendant's motion for individual *voir dire* and sequestration of potential jurors, and the Supreme Court declined defendant's invitation to adopt the rule that judges in criminal cases should always exercise their discretion in favor of selecting jurors one at a time with jurors being sequestered, unless there is some reason for not doing so. N.C.G.S. § 15A-1214(j).

**2. Jury § 6.3; Criminal Law § 5— voir dire—prosecution's comment on insanity—objection not sustained—no expression of opinion**

The trial judge in a murder prosecution did not impermissibly express an opinion by failing to sustain defendant's objection to a comment by the prosecutor during *voir dire* questioning of jurors which, defendant contended, was a statement that a plea of insanity was an attempt by defendant to escape the consequences of unlawful conduct. A contextual reading of the comment indicates that the district attorney was simply telling the panel that the burden

State v. Weeks

of proof on insanity rests with defendant; furthermore, there was no impermissible expression of opinion by the court. N.C.G.S. § 15A-1222.

**3. Jury § 5— murder—juror excused for cause—admonished in presence of other jurors—no error**

There was no error in a murder prosecution where the judge excused a prospective juror for cause, then admonished her in the presence of other prospective jurors for taking a position against the death penalty based solely upon her apparent desire to avoid having to serve upon the jury.

**4. Jury § 6.3— voir dire—pregnant juror—questions as to medical condition not allowed**

There was no prejudice in a murder prosecution from the trial court's refusal to allow defendant to examine a pregnant potential juror about her medical condition, forcing defendant to use a peremptory challenge, where defendant did not exhaust all of his peremptory challenges.

**5. Jury § 7.11— murder—juror excused for cause for opposition to death penalty—no error**

The trial court in a murder prosecution did not err by excusing for cause a juror whose answers, in context, showed that she could not under any circumstances vote to impose the death penalty against anyone.

**6. Jury § 7.11; Constitutional Law § 63— murder—death qualified jury—no error**

The trial court did not err in a murder prosecution by permitting the district attorney to death qualify the jury.

**7. Jury § 6.4— murder—defendant's questions as to death penalty beliefs—excluded—no error**

The trial court did not abuse its discretion in a murder prosecution by not permitting prospective jurors to answer defendant's questions as to whether they believed the death penalty was imposed too often or whether it should be imposed for crimes other than murder.

**8. Criminal Law § 5.1— murder—insanity raised—pretrial order for psychiatric examination—objection waived by introduction of testimony**

In a prosecution for first degree murder where defendant raised insanity, the defendant waived any right to object to the trial court's order to undergo a psychiatric examination to determine his mental state at the time of the crimes where defendant called the psychiatrist to testify on his own behalf and tendered him as an expert witness.

**9. Criminal Law § 50.2— murder—lay testimony concerning defendant's relationship with parents excluded—no prejudice**

The defendant in a murder prosecution was not prejudiced by the court's refusal to allow lay testimony concerning his relationship with his parents during early childhood where defendant presented the same evidence through his expert witnesses.

State v. Weeks

**10. Homicide § 15.4— expert testimony—defendant's state of mind at time of homicides**

The trial court did not err in a first degree murder prosecution in which malice was an issue by not permitting defendant's experts to testify that at the time of the killings, defendant did not act in a cool state of mind, that he was acting under a suddenly aroused violent passion, that he did not act with deliberation, and that his ability to conform his behavior to the requirements of the law was impaired. The trial court admitted a substantial portion of the proffered expert testimony related to defendant's mental condition at the time of the homicides; the excluded testimony embraced precise legal terms, definitions of which are not readily apparent to medical experts; and having the experts testify as requested would have confused rather than helped the jury.

**11. Criminal Law § 77.2— oral statement by defendant—subsequent written statement—excluded—no error**

The trial court in a murder prosecution did not err by excluding a written statement by defendant where defendant made oral statements to an officer, an SBI agent asked defendant to write out a statement later that afternoon, the agent left town for a few hours, defendant told him on his return that he had given the statement to his lawyer, the State introduced the oral statements, and defendant attempted to introduce the written statement as a part of the whole confession. The written statement was not made at the same time as the oral statements and the State did not open the door.

**12. Criminal Law § 87.4— redirect examination—evidence excluded—no error**

The trial court did not err in a prosecution for first degree murder by sustaining the State's objections to defendant's redirect questions concerning whether a psychiatrist's diagnosis of defendant's mental condition was substantially the same as an Air Force diagnosis. Defendant's Air Force medical records were not discussed either on direct or on cross-examination of the witness, so that no clarification of testimony was needed, and the testimony that defendant attempted to elicit was substantially the same testimony that was previously admitted through another expert witness.

**13. Criminal Law § 73— hearsay—victim's state of mind—excluded—no prejudicial error**

The trial court did not err in a murder prosecution by refusing to admit evidence of the mental status of the victim under N.C.G.S. § 8C-1, Rule 803(3) where the very same testimony was elicited from various witnesses throughout the trial. N.C.G.S. § 15A-1443(a).

**14. Constitutional Law § 30— defendant's statements—not disclosed within statutory time frame—admissible**

The trial court did not err in a murder prosecution by admitting statements made by defendant where, although certain statements were not disclosed within a time frame provided by N.C.G.S. § 15A-903(a)(2) (1983), they were disclosed within a reasonable time of the State's learning of the statements, and defendant was given a synopsis of other oral statements.

**15. Homicide § 30.2— first degree murder—failure to submit manslaughter—no error**

    The trial court did not err in a murder prosecution by failing to submit the possible verdict of voluntary manslaughter where neither the State's evidence nor the evidence offered by defendant supports defendant's assertions that the killings were done in a heat of passion provoked by the victims; the State's evidence tended to show an intentional killing with a deadly weapon, thereby raising the presumption of malice; while defendant did present some evidence that his parents were concerned about an excessive phone bill, there was no evidence of any confrontation on the night of the killings or that the killings were provoked by either victim; and, although a gun other than the murder weapon was found on the floor of defendant's father's bedroom, there was no evidence tending to show that either of the victims was the aggressor and had confronted defendant with the gun prior to the killings.

**16. Homicide § 25.1— double murder—felony murder submitted to jury—no error**

    The trial court did not err by submitting to the jury the possible verdict of guilty of first degree murder of his stepmother under the felony murder rule where the underlying felony was the murder of his father. N.C.G.S. § 14-17.

**17. Criminal Law § 112.6— insanity—burden of proof—failure to define satisfaction—no error**

    The trial court did not err in a murder prosecution by instructing the jury that defendant must prove insanity to the jury's satisfaction without defining satisfaction.

**18. Criminal Law § 135.4— double murder—felony murder—judgment on underlying murder arrested**

    Judgment on defendant's conviction for the second degree murder of his father was arrested where defendant was also found guilty of the felony murder of his stepmother, using his father's murder as the underlying felony.

APPEAL by defendant from judgment imposing two sentences of life imprisonment entered by *Brown, J.*, at the 18 September 1985 Criminal Session of Superior Court, WAYNE County, upon jury verdicts of first degree murder and of second degree murder. Heard in the Supreme Court 15 October 1987.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*R. Michael Bruce, for defendant-appellant.*

FRYE, Justice.

Defendant brings forward nineteen assignments of error, seven of which involve court rulings concerning jury *voir dire*. De-

fendant contends also that the trial court violated his right to due process when it ordered him to submit to a second psychiatric evaluation. He next assigns error to six evidentiary rulings made during the trial. Defendant contends also that the trial court erred by refusing to permit the jury to consider possible verdicts of voluntary manslaughter. Next, he argues that the trial court erred in submitting the possible verdict of first degree murder under the felony murder rule. Defendant then argues that the jury instructions concerning his insanity defense were erroneous.

Defendant's eighteenth and nineteenth assignments of error relate to the sentencing phase. First, he contends that the evidence does not support the trial court's finding of the aggravating factor that the murder of defendant's father was especially heinous, atrocious or cruel. Defendant then argues that the court erred in imposing judgment on him for the second degree murder of Jerry Weeks, because this felony was used as the underlying felony for the conviction of defendant for the first degree murder of Peggy Weeks. In this final assignment of error we agree with defendant. This makes it unnecessary to consider his contention regarding the aggravating factor and we express no opinion thereon. Otherwise, we hold that defendant received a fair trial free of prejudicial error.

Defendant was charged with first degree murder, N.C.G.S. § 14-17, of his father, Jerry Weeks, and with first degree murder of his stepmother, Peggy Price Weeks. The jury found defendant guilty of the second degree murder of Jerry Weeks. The jury also found defendant guilty of the first degree murder of Peggy Weeks, specifically finding him guilty under the felony murder rule, but making no finding as to whether he was also guilty on the basis of malice, premeditation, and deliberation.

The court ruled there was no evidence of aggravating circumstances with respect to the conviction of defendant for the first degree murder of Peggy Weeks and sentenced him to the mandatory term of life imprisonment. The court found that the second degree murder of Jerry Weeks was especially heinous, atrocious, or cruel and sentenced defendant to life imprisonment, said sentence to begin at the expiration of the life sentence imposed on the first degree murder conviction. Defendant appealed as of right to this Court. N.C.G.S. § 7A-27(a) (1986).

The evidence at trial was essentially uncontradicted. It established that defendant was the son of Jerry Weeks and the stepson of Peggy Price Weeks. On 17 February 1985, a fire was discovered in the dwelling of the victims by William Weeks, brother of the deceased Jerry Weeks. Peggy Weeks was found outside the dwelling and firemen discovered the body of Jerry Weeks inside. Peggy Weeks died before medical assistance arrived. The evidence showed that the fire had been intentionally set and that both victims died from multiple gunshot wounds. A handgun that was subsequently identified as having been in the possession of defendant was found in a ditch near the dwelling. It was determined that this handgun was the weapon used to kill the victims. The evidence showed that defendant made inculpatory statements and was arrested on the morning of the offenses. The defendant entered pleas of not guilty and not guilty by reason of insanity to two counts of first degree murder. Other evidence pertinent to this appeal is set forth during the discussion of defendant's assignments of error.

[1]   Defendant assigns error to seven rulings made by the trial court during jury *voir dire*. First, he contends that the trial court erred in denying his motion for individual *voir dire* and sequestration of prospective jurors. Defendant argues that because of his insanity defense the *voir dire* required asking prospective jurors sensitive and potentially embarrassing questions exploring possible areas of bias or prejudice with respect to their experiences with mental illness.

Upon a showing of good cause, a trial judge, in a capital case, may permit individual juror selection and sequestration of jurors before and after selection. N.C.G.S. § 15A-1214(j) (1983). Whether to grant sequestration and individual *voir dire* of prospective jurors rests in the sound discretion of the trial court and its ruling will not be disturbed absent a showing of abuse of discretion. *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985). To reverse a decision of the trial court defendant must show that the "ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Barts*, 316 N.C. 666, 679, 343 S.E. 2d 828, 839 (1986).

Defendant concedes that he cannot show an abuse of judicial discretion, but instead asks this Court to adopt the rule that the

judge in a criminal case should always exercise his discretion in favor of selection of the jurors one at a time with jurors being sequestered unless there is some reason, such as a lack of physical facilities, for not doing so. We decline defendant's invitation to so drastically redefine our prior holdings interpreting this statute since to do so would constitute an unwarranted judicial revision of N.C.G.S. § 15A-1214(j).

[2] Defendant next assigns as error the trial court's failure to sustain defendant's objection to a comment made by the prosecutor during *voir dire* questioning of a juror in which defendant contends the prosecutor stated that a plea of insanity is an attempt by defendant to escape the consequences of his unlawful conduct. Defendant argues that by failing to sustain his objection, the trial court impermissibly indicated approval of the prosecutor's proposition, thus violating N.C.G.S. § 15A-1222.

An accused who is legally insane at the time he commits a criminal act is exempt from criminal responsibility for the act committed. *State v. Swink*, 229 N.C. 123, 47 S.E. 2d 852 (1948). In the presence of the jury, a trial judge is precluded from expressing an opinion "on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1983). However, a trial court generally is not impermissibly expressing an opinion when it makes ordinary rulings during the course of the trial. *State v. Welch*, 65 N.C. App. 390, 308 S.E. 2d 910 (1983). Also, an alleged improper statement will not be reviewed in isolation, but will be considered in light of the circumstances in which it was made. *State v. Howard*, 320 N.C. 718, 360 S.E. 2d 790 (1987). Furthermore, defendant must show that he was prejudiced by a judge's remark. *Id.*

During *voir dire* examination of a prospective juror, the following occurred:

Q: Now, generally in a criminal case, the burden of proof, all the burdens of proof are on the State. It means that we have got to prove everything in the case. It just so happens in this case the young man set up what is called commonly a defense of insanity; do you understand that?

A: Yes.

Q: And that means that he was not of sufficient mind to commit the criminal offense and the law says in that regard he

has the burden to prove that to your satisfaction; do you understand that?

A: Yes, I do.

Q: We have the burden to prove the conduct was unlawful and if he wants to escape the consequences, he has the burden to prove that he didn't have the mind sufficient to commit the conduct; do you understand that?

Mr. Bruce: Objection.

Trial Judge: Objection is overruled.

While not technically correct, a contextual reading of the district attorney's challenged comment suggests that he was simply telling the panel that the burden of proof as to the affirmative defense of insanity rests with defendant. In any event we do not find any impermissible expression of opinion by the trial court and defendant has failed to show any prejudice.

[3] In his third assignment of error relating to *voir dire*, defendant argues that the trial court improperly admonished a prospective juror after excusing her for cause. Defendant argues that this admonition, conducted in the presence of other prospective jurors, effectively prevented them from giving honest responses, out of fear of incurring the wrath of the trial court.

During *voir dire*, prospective juror Campbell, in responding to questions posed by the prosecutor, the trial court, and by defense counsel, gave conflicting and confusing answers to questions relating to her ability to be impartial, and to her belief in the death penalty. After excusing Campbell for cause, the trial court admonished her for taking a position against the death penalty based solely upon her apparent desire to avoid having to serve on the jury.

Defendant contends that this admonition by the trial court was improper, arguing that it inhibited other prospective jurors from being candid in their responses. We disagree. It is not improper for a judge to admonish a prospective juror for taking a position solely for the purpose of being excused from jury duty. First, a trial court has a duty to ensure that a competent, fair, and impartial jury is empanelled. *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated*, 403 U.S. 948, 29

L.Ed. 2d 851 (1971). Second, jury service is a public duty from which a qualified citizen can be excused "only for reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health, or safety." N.C.G.S. § 9-6(a) (1986).

Our review of the trial judge's statements reveals no impropriety. It is obvious that this juror was changing her answers in an attempt to avoid jury service. Furthermore, we find nothing in the trial judge's statements that would induce any prospective juror to give less than candid responses. On the contrary, if the admonition conveyed any message to the other prospective jurors it would be for them to be honest in their responses. Defendant's assignment of error is rejected.

[4] Defendant next assigns as error the trial court's refusal to allow defendant to examine a pregnant juror about her medical condition, after the trial court refused to excuse this juror for cause. Defendant argues that he was forced to utilize a peremptory challenge to excuse this juror in order to prevent defendant from being tried by a juror who might not give her full attention to defendant's case, or who might not be able to complete the trial.

The law is well-settled in this jurisdiction that when a defendant has failed to exhaust all of his peremptory challenges he has suffered no prejudice in having to use a peremptory challenge to excuse a juror whom the trial court has refused to excuse for cause. *State v. Avery*, 315 N.C. 1, 337 S.E. 2d 786 (1985). Defendant did not exhaust all his peremptory challenges; therefore he has failed to show any prejudice entitling him to a new trial.

[5] In his next assignment of error defendant contends that the trial court erroneously excused for cause prospective juror Singleton. Defendant argues that the statements made by this prospective juror, while revealing a reluctance on her part to vote for the death penalty, do not show that she would be unable to follow the law of North Carolina.

The proper standard for determining whether a prospective juror may be excused for cause was first espoused in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776 (1968), in which the Supreme Court held that prospective jurors could not be excused

for cause simply because they voiced objections to capital punishment. However, the Court went on to say that prospective jurors could be excused for cause if they express an unmistakable commitment to automatically vote against the death penalty, regardless of the facts and circumstances which might be presented, or if they clearly indicate that their attitudes against the death penalty would prevent them from making an impartial decision as to the defendant's guilt. In *Wainwright v. Witt*, 469 U.S. 412, 83 L.Ed. 2d 841 (1985), the Supreme Court clarified *Witherspoon* and held that the proper standard for determining whether a prospective juror may be excused for cause due to views concerning the death penalty "is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.*, 469 U.S. at 424, 83 L.Ed. 2d at 851-52. This standard is consistent with that set forth in N.C.G.S. §§ 15A-1212(8)-(9). *See State v. Reese*, 319 N.C. 110, 353 S.E. 2d 352 (1987).

A contextual reading of prospective juror Singleton's responses on *voir dire* shows that she could not, under any circumstances, vote to impose the death sentence against anyone. Therefore, the trial court did not err in excusing this prospective juror for cause.

[6] Next, defendant argues that the trial court erred in permitting the prosecutor to death qualify the jury, contending that the death qualified jury deprived him of his right to a fair and impartial trial. As defendant concedes, this Court has consistently rejected arguments that the current jury selection process is unconstitutional. *State v. Avery*, 315 N.C. 1, 337 S.E. 2d 786. Defendant has presented no new arguments that would merit reconsideration of this question. This assignment of error is rejected.

[7] In his final assignment of error relating to jury *voir dire*, defendant argues that the trial court erred in refusing to allow defendant to examine prospective jurors as to their beliefs on capital punishment. Defendant contends that this prevented him from making an intelligent exercise of his peremptory challenges, a right granted by N.C.G.S. § 15A-1214(c).

It is well established that both the defendant and the State have the right to question prospective jurors as to their views concerning capital punishment in order to ensure a fair and im-

partial verdict. *State v. Wilson*, 313 N.C. 516, 320 S.E. 2d 450; N.C.G.S. § 15A-1214(c) (1983). However, this right is not unbridled, *State v. Wilson*, 313 N.C. 516, 320 S.E. 2d 450, and the manner and extent of the inquiry is left in the discretion of the trial court, and these rulings will not be disturbed absent a showing of abuse of discretion. *State v. Adcock*, 310 N.C. 1, 310 S.E. 2d 587 (1984).

Here, defendant sought to inquire as to whether prospective jurors believed that the death penalty was imposed too often or whether it should be imposed for crimes other than first degree murder. These questions are in the legislative or policy arena rather than relevant questions for the jury as a fact finder. Therefore, we find no abuse of discretion on the part of the trial judge in not permitting prospective jurors to answer these questions.

[8] Defendant next contends he was denied his fundamental right to due process when the trial court ordered him to undergo a psychiatric examination to determine his mental state at the time of the homicides. Defendant argues that a trial court has no authority to issue such an order. Alternatively, defendant contends that if a trial court does have such authority, the manner in which the order was entered in this case failed to give him adequate notice and was based on an inadequate evidentiary hearing.

After defendant was arrested he was evaluated at Dorothea Dix Hospital, at the request of his counsel, for the purpose of determining his competency to proceed to trial. At this point in the proceedings defendant had pleaded not guilty to the crimes charged. Subsequently, defendant filed notice of Defense of Insanity, N.C.G.S. § 15A-959, indicating his intent to rely on this defense and to introduce expert testimony on the issue of whether he had the requisite mental state to commit the offenses charged. The State then moved the trial court to order that defendant be transported to Dorothea Dix Hospital for evaluation on the question of his mental status at the time of the alleged offenses. After a hearing on the State's motion, the trial court granted the State's request over defendant's objection. Defendant assigns error to the entering of this order.

While defendant was examined by a psychiatrist pursuant to a court order made at the request of the State, the defendant, not

the State, called the psychiatrist to testify on his behalf. Further, defendant tendered the psychiatrist as an expert witness, and examined him concerning his second examination of defendant made pursuant to the court order. Any error, therefore, in the trial court's order allowing the second examination was cured by defendant's own action in calling the psychiatrist as a witness. Thus, defendant has waived any right to object to the trial court's order. This assignment of error is rejected.

Defendant next brings forward six assignments of error involving evidentiary rulings by the trial court. Each assignment of error is addressed separately.

[9] In his first assignment of error pertaining to evidentiary rulings, defendant argues that the trial court should have allowed lay testimony concerning defendant's relationship with his parents during his early childhood. Defendant contends that this evidence was necessary to lay a foundation for expert witness testimony. He contends that evidence of his troubled life during early childhood was critical to his insanity defense and therefore relevant under the definition of Rule 401 of the N.C. Rules of Evidence, thus admissible under Rule 402.

All relevant evidence generally is admissible, N.C.G.S. § 8C-1, Rule 402, and relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1986). When relevant evidence not involving a right arising under the Constitution of the United States is erroneously excluded, a defendant has the burden of showing that the error was prejudicial. This burden may be met by showing that there is a reasonable possibility that a different result would have been reached had the error not been committed. N.C.G.S. § 15A-1443(a) (1983).

Defendant called three expert witnesses for the purpose of testifying as to defendant's mental and emotional condition at the time the offenses were committed. Prior to calling these witnesses, defendant sought to introduce testimony from various family members and friends or acquaintances of the family regarding his upbringing and childhood problems. These witnesses would have testified to the following: Defendant's mother had a

nerve problem and could not cope with motherhood or stress; defendant was a "hypo-baby" and cried a lot; he had nightmares as a child; he would become very upset or nervous if anyone talked to him the "least bit loud"; his mother was rough with him and at times would "scream and holler and pop him a lot for really nothing"; his mother and father frequently argued and cursed each other in his presence; his mother and father divorced when he was approximately nine years old; during his senior year in high school his mother was hospitalized for mental problems; and his "step-daddy's daddy had approached him in a way that was not natural." Defendant attempted to get this testimony in as foundation for support of the expert witness's medical diagnosis of his mental condition. While the trial court sustained the prosecutor's objection to this lay testimony, the record reveals that defendant, through the testimony of his expert witnesses, was allowed to present the same evidence of his early childhood that the court had earlier disallowed. Therefore, defendant was not prejudiced by the trial court's refusal to allow the lay testimony and his assignment of error is without merit.

[10] Defendant next contends that the trial court erred in not allowing defendant's expert witnesses to give their opinions as to defendant's state of mind at the time of the homicides. Defendant argues that since he was on trial for first degree murder in which the State must prove he acted with malice, the trial court should have allowed the experts' opinions to assist the jury by stating whether defendant had any conscious intent to kill either of the two victims.

Testimony by experts is admissible if it will assist the "trier of fact to understand the evidence or to determine a fact in issue." N.C.G.S. § 8C-1, Rule 702 (1986). Moreover, an expert may be permitted to give his opinion even though it embraces an ultimate issue to be decided by the trier of fact. *Id.*, Rule 704 (1986). However, it is not error for a trial court to refuse to admit expert testimony embracing a legal conclusion that the expert is not qualified to make. *See State v. Ledford*, 315 N.C. 599, 340 S.E. 2d 309 (1986) (under new rules experts still precluded from stating that a legal standard has been met, i.e., that injuries were proximate cause of death); *Murrow v. Daniels*, 85 N.C. App. 401, 355 S.E. 2d 204, *rev'd and remanded on other grounds*, 321 N.C. 494,

364 S.E. 2d 392 (1987) (expert's opinion that defendant's lack of security was "gross negligence" an improper legal conclusion).

In *State v. Wilkerson*, we held that "in determining whether expert medical opinion is to be admitted into evidence the inquiry should be not whether it invades the province of the jury, but whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978). *See also State v. Saunders*, 317 N.C. 308, 345 S.E. 2d 212 (1986) (expert opinion as to nature of deceased's wound properly admitted since it was helpful to the jury in understanding the type of wound involved and in determining whether the defendant acted in self-defense).

In the present case, the trial court admitted a substantial portion of the proffered testimony of defendant's expert witness related to defendant's mental condition at the time of the homicides. Dr. Brad Fisher, a psychologist, testified on behalf of defendant. He gave his opinion that defendant suffered from a chronic emotional disturbance characterized by an inability to deal with stress; that defendant tends to take stress and internalize it; that defendant was not operating in a right state of mind at the time he shot his father and stepmother; and that "it is highly probable that he had no ability at the specific time to distinguish between right and wrong."

Dr. Bob Rollins, a psychiatrist, testified on behalf of defendant, in pertinent part, as follows: that in his opinion defendant did have a mental disorder at the time of the shootings, which he diagnosed as adjustment disorder with mixed disturbance of emotions and conduct. He described adjustment disorder as overreaction to a situation because the person has a particular vulnerability to that stress.

Dr. Selwyn Rose, a psychiatrist, testified that he also diagnosed defendant as suffering from an emotional disorder with disturbance of emotion and conduct. He described defendant as living in a fantasy world, going to his father for reconciliation and going into a rage when rebuffed by his father.

All of the preceding testimony was admitted into evidence. In addition to the above testimony, however, defendant attempt-

ed to have his expert witnesses testify that at the time of the killings defendant did not act in a cool state of mind, that he was acting under a suddenly aroused violent passion, that he did not act with deliberation, and that as a result of his mental disorder his ability to conform his behavior to the requirements of law was impaired.[1] The trial court sustained the prosecutor's objections to this latter testimony and refused to admit it into evidence.

Such testimony embraces precise legal terms, definitions of which are not readily apparent to medical experts.[2] What defend-

---

1. Out of the presence of the jury defendant was permitted to get the questions and answers in the record. The following exchanges are representative:

"Q. And do you have an opinion satisfactory to yourself, based on your evaluation and the sources that you have described as to whether at the time that Jerry Weeks and Peggy Price Jackson Weeks were shot, Terry Wayne Weeks was acting while he was in a cool state of mind?

MR. JACOBS: Object.

THE COURT: Sustained."

---

"Q. Do you have an opinion . . . whether . . . at the time that Peggy Price Jackson Weeks was shot, whether Terry Wayne Weeks was acting under the influence of some suddenly aroused, violent passion; do you have such an opinion?

A. I have an opinion.

Q. And what is that opinion?

A. In my opinion, he was under the influence of suddenly aroused and violent passion."

---

"Q. Do you have an opinion . . . whether . . . at the time that Peggy Price Jackson Weeks was shot, whether Terry Wayne Weeks was acting after premeditation?

A. Yes, I do.

Q. What is that opinion?

A. That it was not, that it was not a premeditated act."

MR. BRUCE: "Your Honor, we would seek the admission of these answers."

2. Dr. Fisher, testifying out of the presence of the jury, in answer to a question as to whether defendant, in his opinion, was acting under the influence of some suddenly aroused, violent passion, responded as follows:

ant sought to accomplish with this testimony was to have the experts tell the jury that certain legal standards had not been met. *See State v. Ledford*, 315 N.C. 599, 340 S.E. 2d 309. We are not convinced that either the psychologist or the psychiatrists were in any better position than the jury to make those determinations. Having the experts testify as requested by defendant would tend to confuse, rather than help, the jury in understanding the evidence and determining the facts in issue. We, therefore, conclude that the trial court did not err in refusing to admit this testimony.

[11] Defendant next contends that the trial court erred in not allowing into evidence a statement written by defendant at the request of one of the police officers. Defendant, citing *State v. Watts*, 224 N.C. 771, 32 S.E. 2d 348 (1944), argues that this exculpatory statement was admissible because inculpating statements made by defendant on the same day were offered by the State and admitted into evidence.

When the State offers into evidence a part of a confession the accused may require the whole confession to be admitted. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated*, 429 U.S. 809, 50 L.Ed. 2d 69 (1976). Thus, when the State introduces part of a statement made by a defendant, the defendant is then entitled to have everything brought out that was said by him at the time the statement was made to enable him to take whatever advantage the statement introduced may afford him. *State v. Watts*, 224 N.C. 771, 32 S.E. 2d 348. However, if the State does not introduce statements of a defendant made on a later date, a defendant is not entitled to introduce these later self-serving statements since the State has not opened the door for such testimony. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296.

In the present case, defendant was questioned on the morning of 17 February 1985. After being advised of his rights defendant agreed to talk to Glenn Odom of the Wayne County Sheriff's

---

I do think he was acting under the influence of a suddenly aroused violent passion; however, I think it's necessary to state that those are, those words come a little hard to psychologists and psychiatrists. I think we work more comfortable with thinking of it as a confused state of mind, a time when he lost control, when he snapped, but I believe that we really are talking about the same thing, just from a different language perspective.

Department. During this conversation defendant admitted certain facts with respect to the crimes with which he was later charged. Defendant was subsequently taken to the Wayne County Sheriff's Department, was again advised of his rights, and made a more detailed statement to Officer Odom. These statements were reduced to writing and were the statements admitted into evidence. Later that afternoon, defendant was questioned by Agent McMahan of the State Bureau of Investigation. Because defendant indicated to Agent McMahan that he did not want to discuss events relating to the killings, Agent McMahan asked defendant to write out a statement for him and gave defendant an Interrogation Advice of Rights Form and some paper on which to write. Agent McMahan then left town and upon his return a few hours later, defendant informed Agent McMahan that he had written out the statement but had given it to his attorney. It is this latter statement that defendant contends should have been allowed into evidence at the trial.

The evidence shows that this statement was not made at the same time as the oral statements that were introduced into evidence. Therefore, in order for defendant to be entitled to introduce this later self-serving statement, the State must have "opened the door." *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296. However, the record shows that neither this statement nor testimony concerning its contents was offered into evidence by the State at any time. Therefore, the State did not open the door for defendant to introduce this subsequent self-serving statement. Furthermore, defendant's reliance on *State v. Watts*, 224 N.C. 771, 32 S.E. 2d 348, is misplaced, since *Watts* involved only one statement, part of which was introduced by the State. We hold that the trial court did not err in excluding defendant's self-serving statement that was solely in the possession of defendant's attorney.

[12] Next, defendant contends that the trial court erred in sustaining the State's objections to defendant's redirect examination of Dr. Bob Rollins concerning whether Dr. Rollins' diagnosis of defendant's mental condition was substantially the same as the United States Air Force's diagnosis. Defendant argues that this redirect examination amounted to clarifying issues brought out by the State on cross-examination rather than introducing new material on redirect as found by the trial court.

On redirect examination of a witness, the calling party is permitted to examine the witness to clarify matters covered on direct examination and to question the witness concerning new matters elicited on cross-examination. 1 Brandis on North Carolina Evidence § 36 (1982). However, the calling party is ordinarily not permitted to either have the direct testimony repeated or to question the witness on entirely new matters. *Id.*

In the case *sub judice*, Dr. Rollins testified, on direct examination by the defense, that he had reviewed documents from the United States Air Force that included defendant's medical records. Dr. Rollins testified further that his review of these records did not change his diagnosis, which was that defendant was suffering from an adjustment disorder. On cross-examination, the State questioned Dr. Rollins regarding defendant's assertion that when he was in the military he suffered from sleepwalking. Dr. Rollins testified that he had doubts whether defendant actually had a problem with sleepwalking. Although Dr. Rollins was cross-examined further, this was the extent of any reference to the Air Force diagnosis. On redirect, defendant attempted to ask Dr. Rollins to compare the two diagnoses and to have Dr. Rollins give his opinion as to whether both tests concluded that defendant was suffering from an adjustment disorder. At this point the State objected and the trial court sustained the objection on the basis that this was new matter.

A review of the record shows that the contents of the Air Force medical records of defendant were not discussed either on direct or on cross-examination of the witness, thus there was no testimony for which a clarification was needed. *State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980). A further review of the record shows that what defendant attempted to elicit from Dr. Rollins on redirect is substantially the same testimony that was previously admitted through the testimony of defendant's expert witness Dr. Fisher. Thus, even if the trial court erred, defendant has not been prejudiced so as to entitle him to a new trial. *State v. Matthews and State v. Snow*, 299 N.C. 284, 261 S.E. 2d 872 (1980).

[13]  In his next assignment of error defendant contends that the trial court committed prejudicial error in refusing to allow testimony concerning the mental status of the victim, Peggy Weeks. Defendant argues that this testimony was important to show a

lack of premeditation on his part because it would show that there might have been a dispute at the time of the killings during which tempers were lost and shootings occurred, possibly in the heat of passion without malice. Defendant argues this evidence was admissible under N.C.G.S. § 8C-1, Rule 803(3), declaration of an unavailable declarant showing an existing mental or emotional condition.

Evidence tending to show a declarant's state of mind is an exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(3) (1986). The evidence is admissible when the state of mind of the declarant is relevant and its probative value is not outweighed by the potential for prejudice. *Griffin v. Griffin*, 81 N.C. App. 665, 344 S.E. 2d 828 (1986). However, the failure of a trial court to admit or exclude this evidence will not result in the granting of a new trial absent a showing by defendant that a reasonable possibility exists that a different result would have been reached absent the error. *State v. Hickey*, 317 N.C. 457, 346 S.E. 2d 646 (1987).

In the present case, defendant attempted to elicit, on cross-examination of Robert Lee Smith, testimony showing that defendant had problems with his father and stepmother, Peggy Weeks. Smith had had dinner with the victims a few hours before they were killed and, had defendant been permitted to question Smith, the evidence would have shown that the victims were concerned about the amount of a telephone bill created by defendant's long-distance calls to Montana, and that they had ordered defendant to get a job to enable him to pay for this telephone bill. Defendant contends that this evidence would have shown some antipathy on the part of the victim Peggy Weeks towards defendant during a period of two to five hours before her death.

Assuming, *arguendo*, that the above evidence should have been admitted, we find that defendant was not prejudiced since the record clearly reveals that this very same testimony was elicited from various witnesses throughout the trial. Because defendant has not shown any prejudice, N.C.G.S. § 15A-1443(a), we find this assignment of error meritless.

[14] In his final assignment of error concerning evidentiary rulings by the trial court, defendant contends that the trial court abused its discretion in admitting statements made by defendant. Defendant argues that the State violated the discovery rules of

N.C.G.S. § 15A-903(a), and contends that the trial court, therefore, erred in admitting this testimony.

Upon motion of a defendant, a trial court must order the prosecutor to permit a defendant to inspect and copy any relevant written or recorded statements in the State's control that were made by a defendant. N.C.G.S. § 15A-903(a)(1) (1983). Further, N.C.G.S. § 15A-903(a)(2) provides that upon motion, the trial court must order the prosecutor to divulge any oral statements made by the defendant that are relevant to the case. When a party fails to comply with the order, the trial court may grant a continuance or a recess, prohibit the violating party from introducing the non-disclosed evidence, or enter any other appropriate order. N.C.G.S. § 15A-910 (1983). Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion. *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983), including whether to admit or exclude evidence not disclosed in accordance with a discovery order. *State v. Braxton*, 294 N.C. 446, 242 S.E. 2d 769 (1978).

Defendant argues that the State failed to comply with the discovery order regarding statements defendant made to Holly Jackson, to B. J. Lee, and to Jerry Best, an investigative officer. A review of the record clearly shows that defendant's argument is without merit.

A review of the *voir dire* concerning the statements made to Holly Jackson reveals that the State first learned of these statements three days prior to introducing them at trial, and disclosed these statements to defendant prior to Jackson testifying at trial. Disclosure of such statements prior to the beginning of the week during which the case is calendared for trial is required if the statement is then known by the State. N.C.G.S. § 15A-903(a)(2) (1983). The evidence shows the State did not know of these statements of Jackson within the time frame as provided by statute. We see no abuse of discretion in the trial court's admitting these statements since it could have determined that the State's disclosure of these statements within three days of discovery was a reasonable time. Similarly, a review of the *voir dire* concerning defendant's statements made to B. J. Lee shows that the State did not learn of these statements until the morning that

they were to be introduced, at which time they were disclosed to defendant.

Regarding defendant's statements made to the investigating officer, Jerry Best, the record shows that defendant was given a synopsis of the oral statements more than a month before trial. When a defendant's statements are oral rather than recorded, the statute requires only that the substance of that statement be provided to a defendant. N.C.G.S. § 15A-903(a)(2) (1983). Defendant has failed to show any abuse by the State of the discovery order or any abuse of discretion by the trial court. Further, defendant has failed to show or assert any prejudice from these statements. N.C.G.S. § 15A-1443(a) (1983). We find defendant's assignment of error concerning discovery without merit.

The next three assignments of error brought forward by defendant involve the trial court's jury instructions that defendant contends were erroneous and prejudicial.

[15] First, defendant assigns as error the trial court's refusal to submit to the jury, with respect to both indictments, possible verdicts of voluntary manslaughter. Specifically, defendant argues that by requiring defendant to prove that he acted in the heat of passion upon adequate provocation or by requiring him to go forward and produce some evidence from which a jury might find that malice has been negated, the trial court impermissibly shifted the burden of proof to defendant in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508 (1975). Furthermore, defendant argues that the evidence was sufficient to support possible verdicts of voluntary manslaughter, thus the trial court erred in failing to submit these possible verdicts to the jury.

Second degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). Malice may be presumed upon proof beyond a reasonable doubt of a killing by the intentional use of a deadly weapon, nothing else appearing. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306 (1977). A jury instruction that creates a presumption that shifts the burden of proof to the defendant violates the fourteenth amendment to the United States Constitution. *Mullaney v. Wilbur*, 461 U.S. 684, 44 L.Ed. 2d 508. However, absent any contrary evidence, the pre-

sumption of malice arises. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575. Once the evidence supports a presumption, a defendant, in order to reduce the crime to voluntary manslaughter, has the burden of going forward with or producing some evidence of heat of passion on sudden provocation, or to rely on such evidence as may be present in the State's case. *State v. Hankerson*, 288 N.C. at 651, 220 S.E. 2d at 589. Moreover, this Court has held that the above requirement does not impermissibly shift the burden of proof of the crime charged to defendant and *Mullaney* is not violated. *Id.* Also, absent any evidence to support it, a trial court is not required to charge the jury on the question of defendant's guilt of lesser degrees of the crime charged. *State v. Wingard*, 317 N.C. 590, 346 S.E. 2d 638 (1986).

Defendant argues that requiring him to rebut the presumption of malice flowing from the State's proof of the intentional infliction of a wound upon the deceased with a deadly weapon, proximately resulting in death, violates *Mullaney*. Defendant's argument is without merit because the presumption persists only in the absence of evidence to the contrary. *State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604 (1979). Evidence raising an issue on the existence of malice and unlawfulness causes the presumption to disappear, "leaving only a permissible inference which the jury may accept or reject." *State v. Reynolds*, 307 N.C. 184, 190, 297 S.E. 2d 532, 536 (1982). Furthermore, if there is any evidence of heat of passion on sudden provocation, either in the State's evidence or offered by the defendant, the trial court must submit the possible verdict of voluntary manslaughter to the jury. *State v. Hankerson*, 288 N.C. at 651, 220 S.E. 2d at 589.

The issue, therefore, is whether there was sufficient evidence to support the submission of voluntary manslaughter to the jury. Defendant, in order to raise an issue entitling him to a voluntary manslaughter charge, must offer evidence or rely on evidence in the State's case showing the following: (1) that he shot his father and stepmother in the heat of passion; (2) that this passion was provoked by acts of the victims which the law regards as adequate provocation; and (3) that the shooting took place immediately after the provocation. *State v. Robbins*, 309 N.C. 771, 778, 309 S.E. 2d 188, 192 (1983).

A review of the record shows that neither the State's evidence nor the evidence offered by defendant supports defendant's

assertions that the killings were done in a heat of passion pro-
voked by defendant's father and stepmother. The State's evidence
tended to show that defendant, after obtaining his gun, went to
his father's bedroom where he shot his father and stepmother
several times. He then set fire to the bedroom while the victims
were still alive. The State's evidence tended to show an intention-
al killing with a deadly weapon, thereby raising the presumption
that the killings were done with malice. While defendant did pre-
sent some evidence that his parents were concerned about an ex-
cessive phone bill, there is no evidence of any confrontation on
the night of the killings or any evidence showing that the killings
were provoked by either victim. Although the State's evidence
tended to show that a derringer, not the murder weapon, was
found on the floor of defendant's father's bedroom, there was no
evidence tending to show that either of the victims was the ag-
gressor and had confronted defendant with the derringer prior to
the killings. We hold that the State's evidence does not show and
defendant has failed to produce any evidence to show heat of pas-
sion on sudden provocation, thus the trial court did not err by
failing to submit the possible verdicts of voluntary manslaughter.

[16]   Next defendant contends that the trial court erred by sub-
mitting to the jury the possible verdict of guilty of first degree
murder of his stepmother under the felony murder rule. Defend-
ant argues that it was not the intent of the legislature to apply
the felony murder rule, N.C.G.S. § 14-17, to a murder committed
in the perpetration of another murder.

The pertinent part of N.C.G.S. § 14-17 reads as follows:

A murder . . . which shall be committed in the perpetration
or attempted perpetration of any arson, rape, or a sex of-
fense, robbery, kidnapping, burglary, *or any other felony*
committed or attempted with the use of a deadly weapon,
shall be deemed to be murder in the first degree . . . .

N.C.G.S. § 14-17 (1986) (emphasis added).

Defendant does not argue that the facts of this case do not
support the application of the felony murder rule, but argues in-
stead, that it was not the intent of the legislature to use this rule
when the underlying felony is murder. This Court has previously
addressed this precise question and found no reason why the
felony murder rule should not be applicable when the underlying

felony is murder, *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981), thus defendant's contention is without merit.

[17] In his final assignment of error relating to jury instructions, defendant contends that the trial court erred in its instructions concerning defendant's burden of proving his insanity defense. Defendant argues that a trial court's refusal to define "satisfaction," as used in the jury instructions, leaves unbridled discretion in the jury as to a defendant's burden of proof and creates a potential for inconsistent jury decisions.

As conceded by defendant, the trial court instructed the jury substantially in accordance with existing North Carolina law on the insanity defense. The trial court instructed the jury in relevant part as follows:

> [T]he defendant has the burden of proof on the issue of insanity. However, unlike the State, which must prove all the other elements of the crime beyond a reasonable doubt, the defendant need only prove his insanity to your satisfaction.

Defendant contends that the trial court should have defined "satisfaction." However, as conceded by defendant, this issue has previously been addressed by this Court, and we found no error in the trial court's refusal to define "satisfaction" to the jury. *State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177. In the present case, as in *Franks*, the jury was properly instructed on the standard of proof needed by defendant to prove his insanity. Furthermore, from its own determination and from the trial court's instructions, a jury knows what satisfies it, and a "jury is presumed to have understood the plain English contained" in the trial court's instruction. *Franks*, 300 N.C. at 18, 265 S.E. 2d at 187. Defendant's argument is meritless.

Defendant next contends that the trial court committed two prejudicial errors during the sentencing phase. He first contends that the trial court erred in finding that the murder of Jerry Weeks was especially heinous, atrocious or cruel. Because of our disposition of defendant's second assignment of error concerning the sentencing phase of the trial we need not address this first assignment of error.

[18] Defendant argues that the trial court erred in imposing judgment on the conviction of defendant for the second degree

murder of Jerry Weeks, because this crime was the underlying felony used for the conviction of defendant for the felony murder of Peggy Weeks.

This Court has consistently held that when the sole basis of a defendant's conviction of first degree murder is pursuant to the felony murder rule, no additional sentence may be imposed for the underlying felony as a separate independent offense, since the underlying felony merges with the conviction of first degree murder. *See State v. Fields*, 315 N.C. 191, 337 S.E. 2d 518 (1985); *State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981).

In the present case the jury specifically found defendant guilty of first degree murder of Peggy Price Weeks under the felony murder rule, but made no finding as to his guilt on the basis of malice, premeditation and deliberation. Because the underlying felony was the murder of Jerry Weeks, the trial court could not impose an additional sentence upon defendant by sentencing him separately for this murder. Therefore, the judgment entered upon defendant's conviction of second degree murder of Jerry Weeks must be arrested.

For the reasons discussed herein, we find no prejudicial error in defendant's trial. However, the judgment entered for the murder of Jerry Weeks is arrested. The result is:

No. 85CRS2447 Murder in the First Degree—no error.

No. 85CRS2446 Murder in the Second Degree—judgment arrested.