NO. COA13-1342

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

    v.

JERRY DENARD POSEY, II

Forsyth County
Nos. 12 CRS 52033-34, 52036


Appeal by Defendant from judgments entered 30 May 2013 by Judge William Z. Wood in Superior Court, Forsyth County. Heard in the Court of Appeals 7 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein, for the State.*
>
> *Sharon L. Smith for Defendant.*


McGEE, Judge.


Jerry Denard Posey, II ("Defendant") was indicted on 10 December 2012 for first-degree murder of Terrance Murchison ("Mr. Murchison"), possession of a firearm by a felon, and carrying a concealed gun. A jury found Defendant guilty of second-degree murder, possession of a firearm by a felon, and carrying a concealed gun. The facts relevant to the issues on appeal are discussed in the analysis section of this opinion. Defendant appeals.

## I. Physical Restraints

Defendant first argues the trial court abused its discretion in requiring Defendant to wear restraints at trial. We disagree.

## A. Standard of Review

"We review the trial court's decision of whether to place [d]efendant in physical restraints for abuse of discretion." *State v. Stanley*, 213 N.C. App. 545, 548, 713 S.E.2d 196, 199 (2011). "A review for abuse of discretion requires the reviewing court to determine whether the decision of the trial court is manifestly unsupported by reason, or so arbitrary that it cannot be the result of a reasoned decision." *Id.*

## B. Analysis

A defendant may be "physically restrained during his trial when restraint is necessary to maintain order, prevent the defendant's escape, or protect the public." *State v. Wright*, 82 N.C. App. 450, 451, 346 S.E.2d 510, 511 (1986). "What is forbidden——by the due process and fair trial guarantees of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. 19 of the North Carolina Constitution——is physical restraint that improperly deprives a defendant of a fair trial." *Id.* In deciding whether restraints are appropriate, a trial

court may consider, among other things, the following circumstances:

> "the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."

*Stanley*, 213 N.C. App. at 550, 713 S.E.2d at 200 (quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353, 368 (1976)). "However, the ultimate decision must remain with the trial judge, who may not resign his exercise of discretion to that of his advisors." *Tolley*, 290 N.C. at 368, 226 S.E.2d at 368.

The record in the present case shows Defendant objected to having to wear a "stiff knee brace[.]" At Defendant's request, the trial court held a hearing to determine whether Defendant should wear the knee brace during trial. A deputy testified that it was "standard operating procedure to place any inmate" being tried for "a murder offense in some sort of restraint at any time when [the inmate was] out of [the sheriff's] custody." Defendant contends that the trial court's ruling "was nothing more than an accommodation of Sheriff's Department policy[.]"

However, the trial court did not base its decision upon this testimony alone. The trial court considered Defendant's past convictions for common law robbery, misdemeanor possession of stolen goods, misdemeanor larceny, and two counts of assault on a female, along with Defendant's three failures to appear in 2012 and two failures to appear in 2011, which the trial court commented tended to show "some failure to comply with the [c]ourt orders[.]" The trial court also considered Defendant's pending charge for simple assault that arose while Defendant was in custody.

As in *State v. Simpson*, the trial court "was in the better position to observe [] [D]efendant, to know the security available in the courtroom and at the courthouse, to be aware of other relevant facts and circumstances, and to make a reasoned decision, in light of those factors, that restraint was necessary or unnecessary." *State v. Simpson*, 153 N.C. App. 807, 809, 571 S.E.2d 274, 276 (2002). Furthermore, where the "record fails to disclose that a defendant's shackles were visible to the jury, 'the risk is negligible that the restraint undermined the dignity of the trial process or created prejudice in the minds of the jurors,' and the defendant will not be entitled to a new trial[.]" *Id.* at 809-10, 571 S.E.2d at 276 (quoting *State v. Holmes*, 355 N.C. 719, 729, 565 S.E.2d 154, 163 (2002)).

In the present case, counsel for Defendant acknowledged that the restraint was "not visible" and, when the trial court commented that it "couldn't hear any jingling[,]" counsel for Defendant agreed. The trial court observed that the knee brace did not make noise or jingle and that the knee brace could not be seen by jurors or potential jurors. When Defendant later walked back into the courtroom, the trial court observed that Defendant "seems to be moving well." The trial court noticed "no problems, no sign of anything." Counsel for Defendant replied that he did not dispute the trial court's observations, but that the knee brace still constituted a restraint. Furthermore, the trial court allowed Defendant to walk to the witness stand out of the sight of the jury.

The present case is analogous to *Simpson* and *Holmes*, in which the shackles were not visible to the jury. *Holmes*, 355 N.C. at 729, 565 S.E.2d at 163; *Simpson*, 153 N.C. App. at 809, 571 S.E.2d at 276. We conclude that the trial court did not abuse its discretion on this basis.

## II. Cross-Examination of Medical Examiner

Defendant next argues the trial court abused its discretion by "precluding [Defendant] from cross-examining medical examiner McLemore regarding her preliminary report of death[.]" However, in "order for a party to preserve for appellate review the

exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861 (2010). Our Supreme Court also held that "the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred." *Id.* "Absent an adequate offer of proof, we can only speculate as to what a witness's testimony might have been." *Id.* at 818, 689 S.E.2d at 861-62.

At trial, the State objected when counsel for Defendant approached the witness with "a document called a preliminary report of death[.]" After the jury exited the courtroom, the State argued that the handwritten note on the report that read "fighting in a club earlier" constituted hearsay. Following a brief *voir dire* examination of the witness, counsel for Defendant argued to the trial court that "it's admissible under the expert rules of testimony." It appears that counsel for Defendant was referring to the preliminary report of death. The trial court stated: "I think under Rule 403 it would be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Defendant made no offer of proof as to the questions Defendant's counsel would have asked of the medical examiner. Defendant also made no offer of proof as to what the medical examiner's response to the questions would have been. Defendant "has failed to preserve this issue for appellate review under the standard set forth in" N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2013). *State v. Braxton*, 352 N.C. 158, 184, 531 S.E.2d 428, 443 (2000).

### III. Sufficiency of the Evidence of Second-Degree Murder

Defendant next argues the trial court erred in denying Defendant's motion to dismiss the charge of second-degree murder. Defendant contends there was insufficient evidence that Defendant acted with malice and not in self-defense.

### A. Standard of Review

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). The "trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The "trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *Id.* at 92, 728 S.E.2d at 347. "All evidence, competent or incompetent, must be considered. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *Id.* at 93, 728 S.E.2d at 347 (internal citations and quotation marks omitted).

### B. Analysis

Defendant presents two different arguments in this section. First, as to malice, the "intentional use of a deadly weapon proximately causing death gives rise to the presumption that (1) the killing was unlawful, and (2) the killing was done with malice." *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). "Evidence raising an issue on the existence of malice and unlawfulness causes the presumption to disappear, leaving only a permissible inference which the jury may accept or reject." *State v. Weeks*, 322 N.C. 152, 173, 367 S.E.2d 895, 907-08 (1988) (internal quotation marks omitted).

If "there is any evidence of heat of passion on sudden provocation, either in the State's evidence or offered by the defendant, the trial court must submit the possible verdict of voluntary manslaughter to the jury." *Id.* at 173, 367 S.E.2d at

908.  In the present case, the trial court did submit the charge of voluntary manslaughter to the jury.  Defendant has not shown error on this basis.

Second, Defendant argues that the State failed to show that Defendant did not act in self-defense.  "A person who kills another is not guilty of murder if the killing was an act of self-defense."  *State v. Hamilton*, 77 N.C. App. 506, 513, 335 S.E.2d 506, 511 (1985).  To survive a motion to dismiss, the State must present "evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that [the] defendant did not act in self-defense." *Id.*

Officer Geddings testified that he was monitoring the crowds exiting from a club shortly after 2:00 a.m. when he noticed "a muzzle flash of a gun" and heard a gunshot.  He looked in the direction of the gunshot and saw Defendant lower a gun.  Officer Geddings was about twenty to twenty-five yards away from Defendant.  Officer Geddings saw no fight or altercation before the gunshot.  He did not see anyone running or hear any yelling before the gunshot.  Officer Geddings allowed Defendant to make calls from his cell phone while in the back seat of the patrol vehicle.  Defendant told his mother on the phone that he "shot somebody."  When his mother asked why,

Defendant answered: "Disrespect." Officer Geddings also did not find any other firearms in the parking lot.

Tommy Murchison, the brother of Mr. Murchison, testified that he and his brother went to the club with their girlfriends. Tommy Murchison exited the club at 2:00 a.m., with his brother behind him, but he was parted from his brother on the way to the vehicle. Tommy Murchison testified that he heard a gunshot and later saw his brother lying on the ground. At that time, Tommy Murchison thought his brother was on the ground because he was simply intoxicated. An officer helped Mr. Murchison into the vehicle. Tommy Murchison testified that they went to get something for his brother to eat. He then noticed that his brother was injured and went directly to a hospital. Tommy Murchison testified that he did not see his brother with a gun that night, nor did he see a weapon in the vehicle.

Tiara Stowe ("Ms. Stowe"), the driver of the vehicle, also testified that no one in her vehicle had a gun. Mr. Murchison's shirt and pants were "fitted tight on him, so you would be able to see" if there was a weapon in his pockets. Ms. Stowe testified that, from her position in the club, she kept an eye on her group. She saw "a little fight break out" near Mr. Murchison around closing time, but Mr. Murchison was not involved in the fight.

Officer Bullard testified that he was about seventy-five feet away from where he thought he heard the gunshot originate. When he approached, he saw an individual staggering and falling to his knees. The individual told Officer Bullard that he had been shot. Officer Bullard testified that he called an ambulance, and that the individual would not speak further to him. Officer Bullard saw no weapon on the individual.

Dedrick Springs ("Mr. Springs") testified for Defendant that he saw "one guy" approach Defendant and say "something like, I'm going to get you after the club." He further testified that this individual and Defendant were "in each other's faces." When Mr. Springs exited the club at closing time, he saw the same individual "pull his gun out on" Defendant. Mr. Springs testified that the individual pulled the gun from his pocket.

Defendant testified that, as he walked to the bathroom, Mr. Murchison asked him "what the f--- [Defendant] was looking at." Defendant further testified that Mr. Murchison approached him aggressively, and Tommy Murchison pulled Mr. Murchison away. When Defendant exited the club at closing time, Mr. Murchison walked up to Defendant, "looked [Defendant] in the eyes, g[a]ve [him] a[n] evil look and said he was going to f---ing kill [Defendant]." Defendant testified that he kept walking, trying

to avoid Mr. Murchison, but Mr. Murchison came toward him again and pulled a weapon. Defendant testified that he shot at the ground to scare Mr. Murchison, but when he shot, "the gun lifted up, like recoiled like that[.]"

Although Defendant contends on appeal that "[a]ll of the evidence in the record supported a finding that the shooting occurred during a sudden quarrel between" Mr. Murchison and Defendant, the transcript belies this assertion. Officer Geddings testified that he was outside the club to provide security, and he testified that he saw no fight or altercation before the gunshot.

As previously stated, the "trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *Bradshaw*, 366 N.C. at 92, 728 S.E.2d at 347. "Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *Id.* at 93, 728 S.E.2d at 347 (internal citations and quotation marks omitted).

The State's evidence in the present case, particularly the testimony of Officer Geddings, is sufficient to convince a rational trier of fact that there was no quarrel or altercation between Mr. Murchison and Defendant prior to the shooting, and that Defendant did not act in self-defense. The discrepancy

between the testimony of Officer Geddings and the testimony of Defendant presented a conflict in the evidence, which was for the jury to resolve. *Hamilton*, 77 N.C. App. at 514, 335 S.E.2d at 511. The trial court did not err in denying Defendant's motion to dismiss and in submitting the charge of second-degree murder, along with the charge of voluntary manslaughter, to the jury.

No error.

Chief Judge MARTIN and Judge CALABRIA concur.