STATE OF NORTH CAROLINA v. MELVIN CLAUDE ROSE, JR.

No. 54A88

(Filed 3 November 1988)

**1. Homicide § 18.1— murder—premeditation and deliberation—evidence of state of mind**

In a murder prosecution where there was psychiatric testimony that defendant could not form the specific intent to kill because he was suffering from a psychotic episode resulting from chronic stress, defendant was entitled to an instruction allowing the jury to consider this testimony in determining whether he in fact premeditated and deliberated the murder of the two victims.

**2. Criminal Law § 53; Homicide § 18— murder—premeditation and deliberation— psychiatric opinion—excluded**

The trial court did not err in a murder prosecution by not instructing the jury that they could consider the opinion of an expert regarding whether premeditation and deliberation existed where defendant's psychiatric expert had been asked whether defendant could have premeditated or planned or deliberated the killings, the State's objection was sustained, defendant did not make an offer of proof until the next day, the psychiatrist was not then present, and the trial court refused to allow insertion of the answer into the record. Even assuming that the answer was apparent from the context, the doctor's opinion that defendant could not have premeditated or deliberated would have been inadmissible as a conclusion that a legal standard had not been met. N.C.G.S. § 8C-1, Rule 103.

**3. Criminal Law § 138.29— aggravating factor—joined offenses—improper**

The trial court erred by aggravating a sentence for second degree murder of one victim by the joined offense of the murder of the second victim. N.C.G.S. § 15A-1340.4(a)(1)o (1983).

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing a life sentence and a consecutive fifty-year sentence entered by *Fountain, J.,* at the 19 October 1987 Special Criminal Session of Superior Court, TYRRELL County, upon defendant's conviction by a jury of one count of first-degree murder and one count of second-degree murder. Heard in the Supreme Court 11 October 1988.

*Lacy H. Thornburg, Attorney General, by Isham B. Hudson, Senior Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant was indicted on two counts of murder for the shooting deaths of his cousin, Danny Ray Bateman, and Bateman's girlfriend, Jill Alexander. The cases were joined and tried as capital cases. The jury convicted defendant of first-degree murder for the shooting of Danny Bateman, for which it recommended a life sentence, and of second-degree murder for the shooting of Jill Alexander, for which the trial court imposed a fifty-year consecutive sentence.

Since we award defendant a new trial for the murder of Danny Bateman and a new sentencing hearing for the murder of Jill Alexander, a summary of the facts will suffice. On the evening of 30 January 1987, defendant and his wife were entertaining defendant's cousin, Danny Bateman, Danny's girlfriend, Jill Alexander, and another friend in their home in Columbia, North Carolina. Defendant was drinking whiskey and the other men were drinking beer. At approximately 12:30 a.m., defendant left the house to find a local hunter in town, taking a pistol and a shotgun with him. While in town, he displayed the weapons to several friends and shot out a window of the Columbia Health Clinic. Defendant returned to his house at approximately 1:25 a.m. and, after drinking the whiskey remaining in his cup, went to his bedroom without saying a word. His wife followed him, but ten minutes later returned to the living room where the guests were watching television, saying that defendant had a gun. Defendant came in and fired a .410 shotgun at Jill Alexander's head, killing her. He then picked up a .22 rifle and shot Danny Bateman in the side. At this point, everyone except defendant made for the front door on hands and knees. Defendant fired twice more as they exited the house. Danny ran across the street, but defendant followed him and shot him in the head, fatally wounding him.

At trial, defendant's theory of defense was that he was either (1) legally insane or (2) if legally sane, he was by reason of his state of mind incapable of premeditation or deliberation or of forming a specific intent to kill at the time of the crimes. Among other witnesses, Dr. Billy Royal, a forensic psychiatrist, testified for the defense. According to Dr. Royal, defendant was experiencing a psychotic episode on the night of the killings, such that he did not understand his actions or know right from wrong and

could not have formed the specific intent to kill Danny Bateman or Jill Alexander. He testified further that the psychotic episode had resulted from chronic stress which, in turn, resulted from defendant's method of resolving problems in his relationships with people and that an injury from a bump on the head which defendant had received in December 1986 was a contributing cause. Finally, Dr. Royal testified that defendant's psychotic episode began between the time when defendant left for town and immediately before the shootings and terminated at some moment after the shootings. Defendant could have had momentary psychotic episodes while in town and could afterwards have returned to a state in which he functioned in a fairly normal way.

On appeal, defendant presents seven questions for review. We address two. Defendant first contends that the trial judge erroneously failed to give two of defendant's requested written jury instructions. He argues that this failure so prejudiced him that he is entitled to a new trial for both murders. Because we hold that the trial judge should have given one of the instructions, we award defendant a new trial for the murder of Danny Bateman.

[1] Defendant submitted two special instructions, the first of which was as follows:

> You may consider the Defendant's mental condition in connection with his ability to form the specific intent to kill.

The trial judge refused to give this instruction. Instead, he gave the standard instruction to the effect that intent is a state of mind, that is, a mental attitude which must ordinarily be proved by circumstances from which it may be inferred, rather than by direct evidence. Defendant argues that because his state of mind was a predominant feature of these joined cases, he was entitled to his requested instruction under *State v. Shank*, 322 N.C. 243, 367 S.E. 2d 639 (1988). Defendant's argument has merit as to the murder of Danny Bateman. In *Shank*, this Court concluded that "[t]estimony that a defendant was incapable of planning his activities or carrying out plans, and that he was under mental or emotional disturbance, could assist the jury in determining whether [he] in fact premeditated and deliberated." *Id.* at 248, 367 S.E. 2d at 643. We held there that such testimony was admissible under N.C.G.S. § 8C-1, Rule 704, and that the error in the trial court's refusal to allow the testimony was prejudicial, entitling

State v. Rose

that defendant to a new trial for the murder of his wife. In the case *sub judice,* the trial court properly allowed Dr. Royal's testimony that in his opinion defendant could not form the specific intent to kill Jill Alexander or Danny Bateman. Defendant was entitled to have the jury consider this testimony in determining whether he in fact premeditated and deliberated the murder of the two victims. It follows, therefore, that since the testimony was before the jury, defendant was entitled to a jury instruction on this element of the crimes. *See* N.C.G.S. § 15A-1232 (Cum. Supp. 1987).

The law is well settled that a judge is required to instruct on all substantial features of the case. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982). *See* N.C.G.S. § 15A-1232 (Cum. Supp. 1987). Where an instruction is requested by a party, and where that instruction is supported by the evidence, it is error for the trial court not to instruct in substantial conformity with the requested instruction. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649; *State v. Hairr,* 244 N.C. 506, 94 S.E. 2d 472 (1956). The instruction that the trial court gave was a general statement to the jury on intent and the method of proving that defendant had formed the specific intent to kill. Defendant's requested instruction would have allowed the jury to focus on defendant's mental condition as it pertained to his ability to premeditate and deliberate. In light of the centrality of the issue of defendant's state of mind, we conclude that a reasonable possibility exists that, had the error in question not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1983). Defendant, therefore, is entitled to a new trial for the murder of Danny Bateman. ·

Defendant is not, however, entitled to a new trial for the killing of Jill Alexander. Defendant was tried for first-degree murder in her case, but the jury found him guilty of second-degree murder. From its verdict, the jury apparently did not find that defendant had formed the specific intent to kill after premeditation and deliberation required for a conviction of first-degree murder. In proving second-degree murder, the State is not required to prove that defendant had the specific intent to kill. *State v. Alston,* 295 N.C. 629, 635, 247 S.E. 2d 898, 902 (1978); *State v. Lester,* 289 N.C. 239, 243, 221 S.E. 2d 268, 271 (1976). Defendant thereby suffered no prejudice from the trial court's refusal to

give his requested special instruction with regard to the murder of Jill Alexander.

**[2]** Defendant requested a second special instruction, as follows:

> Finally, in considering whether premeditation and deliberation existed you may consider the opinions rendered by expert witnesses regarding those elements.

The trial court refused to give this instruction. Defendant contends that the refusal was prejudicial error. We disagree.

During direct examination of Dr. Royal, defendant's counsel asked him if he had an opinion as to whether or not defendant "under his state of mind" at the time of the killings could have "premeditated or planned or deliberated" them. The State's objection to this question was sustained. No proffer of what the answer would have been was made at that time. Defense counsel attempted to insert an answer into the record on the following day. Dr. Royal was no longer present and the trial court properly refused to allow such an insertion. The trial transcript reveals that the jury had no expert opinion evidence before it in which the expert witness testified that his opinion was applicable to the elements of premeditation and deliberation. Since defendant's requested instruction was not supported by the evidence, the trial court properly refused to give it. *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165 (1961).

Defendant contends, however, that Dr. Royal's answer was admissible under N.C.G.S. § 8C-1, Rule 103. Assuming, arguendo, that the answer was apparent from the context within which the question was asked and that it would have been Dr. Royal's opinion that defendant could not have premeditated or deliberated the killings, such testimony would have been inadmissible as a conclusion that a legal standard had not been met. *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985).

> The rule that an expert may not testify that . . . a particular legal conclusion or standard has or has not been met remains unchanged by the new Evidence Code, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness. 3 D. Louisell & C. Mueller, Federal Evidence § 395 (1979). *See also State v. Robinson*, 310 N.C. 530, 538, 313 S.E. 2d 571, 577 (1984).

*Id.* at 100, 337 S.E. 2d at 849. *See also State v. Weeks,* 322 N.C. 152, 166, 367 S.E. 2d 895, 904 (1988) (testimony embraced precise legal terms, definitions of which are not readily apparent to medical experts); *State v. Ledford,* 315 N.C. 599, 340 S.E. 2d 309 (1986) (expert's use of term "proximate cause" constituted testimony that a legal standard had been met). Premeditation and deliberation are legal terms of art.

> Premeditation means that the defendant formed the specific intent to kill for some length of time, however short, before the actual killing. *State v. Misenheimer,* 304 N.C. 108, 282 S.E. 2d 791 (1981). Deliberation means that the intent to kill was executed in a cool state of blood, without legal provocation, and in furtherance of a fixed design for revenge or to accomplish some unlawful purpose. *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). No particular length of time is required for the mental processes of premeditation and deliberation; it is sufficient that the processes occur prior to, and not simultaneously with, the killing. *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970).

*State v. Cummings,* 323 N.C. 181, 188, 372 S.E. 2d 541, 547 (1988). A medical expert's opinion as to whether these legal standards have or have not been met is inadmissible. That determination is for the finder of fact.

[3]    Defendant next contends that the trial judge erroneously aggravated his sentence for the second-degree murder of Jill Alexander by the joined offense of the murder of Danny Bateman. The State concedes the point, as it must. Apart from the joined offense of the first-degree murder of Danny Bateman, defendant's only other prior convictions were for failing to stop for a blue light and driving while impaired, both of which arose out of the same incident. In sentencing defendant, the trial court found that

> [t]he murder for which the defendant is convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of *another crime of murder.*

(Emphasis added.)

A sentencing judge may not use a joined or joinable offense in aggravation. *State v. Westmoreland,* 314 N.C. 442, 334 S.E. 2d

223 (1985); *State v. Lattimore,* 310 N.C. 295, 311 S.E. 2d 876 (1984). *See* N.C.G.S. § 15A-1340.4(a)(1)(o) (1983). Because the trial court aggravated defendant's sentence for the murder of Jill Alexander by the joined offense of the murder of Danny Bateman, defendant is entitled to a new sentencing hearing on the second-degree murder of Jill Alexander.

We hold that defendant is entitled to a new trial for the murder of Danny Bateman and a new sentencing hearing for the second-degree murder of Jill Alexander. In view of our disposition of these cases, we do not address defendant's other assignments of error.

No. 87CRS28 (Danny Bateman): New trial;

No. 87CRS27 (Jill Alexander): New sentencing hearing.