398 S.E.2d 314 (1990)
327 N.C. 399
STATE of North Carolina
v.
Melvin Claude ROSE, Jr.
No. 408A89.
Supreme Court of North Carolina.
December 5, 1990.
Lacy H. Thornburg, Atty. Gen. by Joan H. Byers, Sp. Deputy Atty. Gen., Raleigh, for the State.
Malcolm Ray Hunter, Jr., Appellate Defender by Mark D. Montgomery, Asst. Appellate Defender, Raleigh, for defendant.
FRYE, Justice.
Defendant was indicted on 2 March 1987 for two counts of murder for the deaths of his cousin, Danny Ray Bateman, and Bateman's girlfriend, Jill Alexander, on 31 January *315 1987. The cases were joined and tried as capital cases. The jury returned a verdict of first degree murder for the death of Bateman and recommended a life sentence. The jury found defendant guilty of second degree murder for the death of Ms. Alexander, and the trial court imposed a fifty-year sentence to commence at the expiration of the life sentence. Defendant appealed these convictions, and this Court awarded defendant a new trial for the murder of Bateman and ordered a new sentencing hearing for the murder of Ms. Alexander. State v. Rose, 323 N.C. 455, 373 S.E.2d 426 (1988) (Rose I).
At the new trial which proceeded in a non-capital fashion, defendant was found guilty of first degree murder and sentenced to life in prison. After the new sentencing hearing for the second degree murder conviction, the trial court imposed a consecutive fifty-year sentence. Defendant appeals from both his conviction of first degree murder and the fifty-year sentence for the second degree murder conviction.
Defendant contends that during the trial on the first degree murder charge, the trial court erred in allowing the State's rebuttal witness, Dr. Bob Rollins, to testify that in his opinion defendant was capable of premeditating on the day of the murder. Defendant contends that admission of this testimony over his objection violates our decision in Rose I. We agree and grant defendant a new trial on the first degree murder charge.
Defendant further contends that in the sentencing hearing for the second degree murder conviction the trial court erred in finding as statutory aggravating factors (1) that defendant employed a hazardous instrument endangering the life of more than one person; and (2) that defendant had a prior conviction. We find no error in the sentencing hearing for the second degree murder conviction. Defendant raises other issues on appeal relating to the guilt phase of his trial for first degree murder, but since these issues are unlikely to arise at the new trial, we find it unnecessary to discuss them.
The facts of this case are set out in Rose I, and we need not repeat them at this time. Additional facts will be discussed in the opinion as needed.
During the course of the retrial on the first degree murder charge, defendant called Dr. Royal who testified that defendant neither knew right from wrong nor was capable of forming specific intent to commit this murder. The State called Dr. Bob Rollins to rebut Dr. Royal's testimony. Defendant objected to Dr. Rollins' testimony which included the following questions and answers:
Q. Have you an opinion satisfactory to yourself based upon your interviews and evaluation of the defendant and based upon the information which was furnished to you whether or not Mr. Rose was capable of premeditating on the 31st of January?
[Defendant's objection overruled]
A. I have an opinion.
Q. What is your opinion?
A. He was.
[Defendant's motion to strike denied]
In State v. Smith, 315 N.C. 76, 337 S.E.2d 833 (1985), this Court considered some of the limits of expert testimony at trial and stated:
The rule that an expert may not testify that ... a particular legal conclusion or standard has or has not been met remains unchanged by the new Evidence Code, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness.
Id. at 100, 337 S.E.2d at 849 (citations omitted).
This Court followed this same rule in State v. Ledford, 315 N.C. 599, 340 S.E.2d 309 (1986). In that case the State's pathologist was allowed to answer at trial, over defendant's objection, whether the injuries suffered by the victim were the "proximate cause" of her death. Id. at 618, 340 S.E.2d at 319. While concluding that the error was not so prejudicial as to warrant a new trial, this Court concluded that the testimony complained of "did purport to state that *316 a legal standard had been met and its admission was therefore error." Id. at 620, 340 S.E.2d at 322.
In State v. Weeks, 322 N.C. 152, 367 S.E.2d 895 (1988), this Court addressed the issue of whether the trial court erred in refusing to admit certain testimony offered by defendant's expert witness concerning whether defendant could have acted with premeditation and deliberation. Defendant contended on appeal that his expert witness, a psychiatrist, should have been allowed to testify:
that at the time of the killings defendant did not act in a cool state of mind, that he was acting under a suddenly aroused violent passion, that he did not act with deliberation, and that as a result of his mental disorder, his ability to conform his behavior to the requirements of law was impaired.
Id. at 166, 367 S.E.2d at 903 (footnote omitted). This Court held that testimony of this nature is not admissible because it "embraces legal terms, definitions of which are not readily apparent to medical experts." Id. at 166, 367 S.E.2d at 904 (footnote omitted). In explaining this holding, the Court further noted:
What defendant sought to accomplish with this testimony was to have the experts tell the jury that certain legal standards had not been met. See State v. Ledford, 315 N.C. 599, 340 S.E.2d 309. We are not convinced that either the psychologist or the psychiatrists were in any better position than the jury to make those determinations. Having the experts testify as requested by defendant would tend to confuse, rather than help, the jury in understanding the evidence and determining the facts in issue. We, therefore, conclude that the trial court did not err in refusing to admit this testimony.
Id. at 166-67, 367 S.E.2d at 904.
In the appeal from his first trial, defendant contended that his expert witness should have been permitted to give his opinion "as to whether or not defendant `under his state of mind' at the time of the killings could have `premeditated or planned or deliberated' them." Defendant claimed that this testimony was admissible under N.C.G.S. § 8C-1, Rule 103. However, this Court rejected defendant's contention and stated:
Assuming, arguendo, that the answer was apparent from the context within which the question was asked and that it would have been Dr. Royal's opinion that defendant could not have premeditated or deliberated the killings, such testimony would have been inadmissible as a conclusion that a legal standard had not been met.
Rose I, 323 N.C. at 459, 373 S.E.2d at 429 (citing State v. Smith, 315 N.C. 76, 337 S.E.2d 833). The Court continued, "[p]remeditation and deliberation are legal terms of art.... A medical expert's opinion as to whether these legal standards have or have not been met is inadmissible. That determination is for the finder of fact." Id. at 460, 373 S.E.2d at 429-30 (emphasis added).
As this Court stated in State v. Williams, 224 N.C. 183, 29 S.E.2d 744 (1944), aff'd, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, reh'g denied, 325 U.S. 895, 65 S.Ct. 1560, 89 L.Ed. 2006 (1945), "Where a case is tried under a misapprehension of the law, the practice is to remand it for another hearing.... This then became the law of the case." Id. at 189, 29 S.E.2d at 748 (citations omitted). Our decision in Rose I is the law of the case, and at the new trial, the court below was bound to follow our holding in Rose I. Rose I clearly held that a medical expert may not give his opinion as to whether the legal standard of premeditation has or has not been met. However, the trial court allowed Dr. Rollins to testify over defendant's objection that in his opinion defendant was capable of premeditating on the day in question. Allowing this testimony at the second trial is in violation of our decision in Rose I and constitutes error entitling defendant to a new trial on the first degree murder charge.
The State concedes that Dr. Rollins' testimony was in error, but the State contends that the error does not render the result in *317 this case unreliable. We disagree that the error was harmless. At defendant's first trial, he requested two special instructions. The first instruction was, "You may consider the Defendant's mental condition in connection with his ability to form the specific intent to kill." Rose I, 323 N.C. at 457, 373 S.E.2d at 428. We held that the trial judge erred in refusing to give this instruction because it "would have allowed the jury to focus on defendant's mental condition as it pertained to his ability to premeditate and deliberate." Id. at 458, 373 S.E.2d at 428.
In the present case, as in the first trial, defendant's state of mind at the time of the killing was the central issue of the case. Without the challenged testimony, the only testimony going to the mens rea of first degree murder was lay opinion testimony that defendant knew right from wrong, and the contradictory testimony of Drs. Royal, Lara, and Rollins regarding defendant's ability to plan or to form specific intent. From this evidence, a juror could reasonably have doubted that defendant formed the specific intent to kill after deliberation and premeditation. With the challenged testimony, the jury was assured by Dr. Rollins that defendant was capable of premeditating the killing. Drawing further attention to this testimony, the State, during its closing argument, also referred to Dr. Rollins' testimony concerning defendant's ability to premeditate. Thus, the error in allowing Dr. Rollins' testimony that defendant was capable of premeditating was compounded by the State's argument to the jury and was not harmless error as the State contends. Accordingly, defendant is entitled to a new trial on the first degree murder charge.
Defendant also brings forward two assignments of error relating to the new sentencing hearing he received for his conviction for the second degree murder of Ms. Alexander. Defendant first claims that the trial court erred in finding as a statutory factor in aggravation under the Fair Sentencing Act that "defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." Ms. Alexander was shot in the head and neck by a single-shot shotgun while she was sitting on a couch with Bud McGowan and Bateman, the other victim. After Ms. Alexander was shot, Bateman and McGowan ran from the house, and defendant ran after them, shooting Bateman with a .22 rifle. To impose this aggravating factor, the sentencing judge must focus on two considerations: (1) whether the weapon in its normal use is hazardous to the lives of more than one person; and (2) whether a great risk of death was knowingly created. State v. Carver, 319 N.C. 665, 356 S.E.2d 349 (1987). This Court has held that "a shotgun is a weapon which would normally be hazardous to more than one person if it is fired into a group of two or more persons in close proximity to one another." State v. Moose, 310 N.C. 482, 498, 313 S.E.2d 507, 518 (1984) (interpreting this same language as it is found in N.C.G.S. § 15A-2000(e)(10), a part of our capital sentencing statute).
Defendant contends that the weapons in this casea single-shot shotgun and a .22 riflewere not used in such a way as to create a great risk of death to more than one person. Defendant notes that the shotgun was fired directly into the body of Ms. Alexander from a distance of a few feet and that no one else was hit by the shots. Defendant further notes that the rifle was fired first after Bateman and McGowan fled from the house so that only Ms. Alexander's body was in the house, and thus no one else could have been endangered by the rifle shots. Defendant contends that only Bateman was endangered by the rifle shots which defendant fired outside the house as Bateman and McGowan were fleeing.
When finding an aggravating factor, the sentencing judge does not have to specify the specific evidence on which he relied to find that factor. State v. Baucom, 66 N.C.App. 298, 311 S.E.2d 73 (1984). The record, however, must contain sufficient evidence to support the aggravating factor. Id. The evidence in the present case supports the finding of this aggravating *318 factor. As noted above, this Court has already held that a shotgun in its normal use may be considered a weapon hazardous to the lives of more than one person as those words are used in N.C.G.S. § 15A-2000(e)(10), one of the statutory aggravating circumstances which may be considered in a capital sentencing proceeding. State v. Moose, 310 N.C. at 498, 313 S.E.2d at 518. The language interpreted in Moose to hold that a shotgun is a weapon which would normally be hazardous to the lives of more than one person is identical to the language found in N.C.G.S. § 15A-1340.4(a)(1)g, which is the aggravating factor the sentencing judge found in the present case. See N.C.G.S. § 15A-1340.4(a)(1)g (1988) and N.C.G.S. § 15A-2000(e)(10) (1988). We find no justifiable reason for giving a different interpretation to the identical language found in the two statutes. Thus, we conclude that the record contains sufficient evidence to support the first part of the testthat the weapon in its normal use is hazardous to the lives of more than one person.
The evidence also indicates that when defendant fired a shotgun at Ms. Alexander, she was sitting on the couch with two other people. In Moose, defendant fired a shotgun into the cab of a truck where two people were sitting, and this Court held that this evidence was "sufficient evidence from which the jury could conclude that the defendant knowingly created a great risk of death [to more than one person]." Moose, 310 N.C. at 489, 313 S.E.2d at 511. While the living room in the present case was not as small as the cab of the truck in Moose, nevertheless, three persons were sitting close to each other on the same couch when defendant fired the shotgun from a distance of less than twelve feet away. Any reasonable person would know that firing a shotgun at a target across a room as was done in this case would cause the shotgun pellets to scatter, creating a great risk of death to the three people sitting on the couch. Thus, we conclude that the record contained sufficient evidence to support the sentencing judge's finding of this aggravating factor. Since there is evidence to support this factor from the evidence surrounding the firing of the shotgun, we find it unnecessary to discuss the risk created by firing the rifle.
Defendant's final assignment of error is that the sentencing judge erred in finding as an aggravating factor for the second degree murder conviction that defendant had a prior conviction. Defendant contends that the sentencing judge erred in finding as an aggravating factor defendant's prior conviction in 1984 of driving while impaired. For this conviction defendant was sentenced to sixty days' imprisonment suspended for one year. Defendant contends that this conviction is not related to the purposes of sentencing for the second degree murder conviction and therefore was improperly considered as an aggravating factor.
The statutory provision at issue here provides for the following to be considered as an aggravating factor:
The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement....
N.C.G.S. § 15A-1340.4(a)(1)o (1988). Defendant was convicted of a level four driving while impaired offense which carries a possible sentence of up to one hundred and twenty days in prison. Thus, defendant's prior conviction meets the standard set out in the statute to find this conviction an aggravating factor.
In State v. Parker, 319 N.C. 444, 355 S.E.2d 489 (1987), defendant argued that the sentencing judge erred in finding as an aggravating factor that he had prior convictions when the convictions were for two counts of misdemeanor breaking or entering, misdemeanor larceny, and one count of damage or injury to personal property. Id. at 448, 355 S.E.2d at 491. Defendant in Parker contended that these convictions arose from the same episode and were relatively minor offenses. In response to that argument, this Court stated:
The General Assembly has determined that a conviction of a criminal offense punishable by more than sixty days' confinement shall be an aggravating factor. *319 N.C.G.S. § 15A-1340.4(a)(1)o. If we were to hold that such a factor should be of small weight in imposing a sentence if we determined the crime for which the defendant was convicted is a minor offense we would be substituting our judgment for the judgment of the Legislature, which we cannot do.
Id. In the present case, defendant is asking much the same thing as the defendant in Parker by asking us to find that a driving while impaired conviction is not related to the purposes of sentencing for second degree murder. We conclude, as we did in Parker, that to say that an offense which is punishable by more than sixty days should not be used as an aggravating factor because it is not related to the purposes of sentencing for the crime charged would be "substituting our judgment for the judgment of the Legislature." This we again decline to do.
For the reasons stated herein, we hold that defendant is entitled to a new trial for the murder of Bateman. We find no error in defendant's sentencing hearing on his conviction of the second degree murder of Ms. Alexander and therefore uphold defendant's fifty-year sentence for that conviction.
Case No. 87CRS28New Trial.
Case No. 87CRS27Affirmed.