STATE OF NORTH CAROLINA v. THADDIUS RAEFIELD WRIGHT

No. COA10-794

(Filed 5 April 2011)

**1. Criminal Law— defenses—withdrawal—completion of assigned task**

The trial court did not err by refusing defendant's requested instruction on the defense of withdrawal in a prosecution for first-degree burglary and assault with intent to kill inflicting serious injury where defendant completed his assigned task when he kicked the victim's door even though he expressed some hesitancy before doing so and even though he left the scene after kicking the door.

**2. Criminal Law— failure to give final not guilty mandate—not plain error**

The trial court's failure to give the final not guilty mandate in a burglary and assault prosecution did not rise to plain error.

Appeal by defendant from judgment entered 23 November 2009 by Judge Cressie Thigpen, Jr. in Durham County Superior Court. Heard in the Court of Appeals 15 December 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

STEELMAN, Judge.

STATE v. WRIGHT

[210 N.C. App. 697 (2011)]

Where the evidence presented at trial tended to show that defendant completed his assigned task in the home invasion and failed to renounce the common purpose or indicate that he did not intend to participate in the crime any further, the trial court did not err in denying his request to instruct the jury on the defense of withdrawal. Where defendant failed to contend that the trial court's jury instructions amounted to plain error, this issue has been waived and is dismissed.

## I. Factual and Procedural Background

On 16 November 2004 at approximately 7:00 p.m., Thaddius Wright (defendant), Jarrett Bishop (Bishop), and Jarrett Thompson (Thompson) were driving around Durham, smoking marijuana. When the men stopped for gas, Thompson stated that he was planning to attack Ruben Garnett (Garnett). The plan was to drive to his apartment, kick the door in, find him, beat him up, and then shoot him. Defendant stated that he did not want to "get a murder charge," but Bishop and Thompson convinced him to kick in the door and then they would attack Garnett.

Defendant's version of the events that occurred next is as follows: when they arrived at Garnett's apartment at approximately 4:30 a.m., Bishop and Thompson exited the vehicle and retrieved guns from underneath the hood of the vehicle. The three men put on gloves and walked up to the glass storm door of Garnett's apartment. Defendant opened the door and stated that he did not want to go through with it. Thompson stated, "Come on man, ain't nobody coming. You ain't got to do nothing, just kick the door." Defendant kicked the door twice. Defendant then panicked and ran back to the vehicle. Defendant heard gunshots coming from the apartment. Approximately one minute later, Bishop and Thompson returned to the vehicle and stated, "[W]e got him."

Garnett lived in the apartment with his cousin, Demoris Wall, and his cousin's girlfriend, Akeisha Judd (Judd). Garnett and Judd were awakened by the kicks at the front door and someone yelling "police." Garnett put a pair of pants on and was walking towards the front door when the door was kicked open. He was shot four or five times in the stomach, groin, and leg. After he was shot, Garnett played dead. Judd called 911.

Officer Douglas Rausch (Officer Rausch) responded to a home invasion call. As he was driving to the apartment, Officer Rausch observed a vehicle drive past him coming out of the area of the apartments. Officer

Rausch turned around and began to follow the vehicle. A high speed chase ensued. The chase lasted almost an hour, moving from Durham County into Orange County. The chase ended when the vehicle crashed into a van. Bishop, Thompson, and defendant were arrested.

Defendant was charged with felonious speeding to elude arrest, cruelty to animals,[1] assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree burglary. Defendant was originally tried by a jury on 23 October 2006. Defendant was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury and first-degree burglary, but acquitted of the felonious speeding to elude arrest and animal cruelty charges. Defendant appealed. On 18 March 2008, this Court reversed defendant's convictions and ordered a new trial based upon error by the trial court in denying defendant's *Batson* challenge to the exercise of peremptory challenges by the prosecutor. *State v. Wright*, 189 N.C. App. 346, 354, 658 S.E.2d 60, 65, *disc. review denied*, —— N.C. ——, 667 S.E.2d 280 (2008).

On 16 November 2009, defendant was re-tried on the charges of assault with a deadly weapon with intent to kill inflicting serious injury and first-degree burglary. On 20 November 2009, the jury found defendant guilty of each charge. The trial court found defendant to be a prior record level IV for felony sentencing purposes. The trial court consolidated both convictions into one judgment and sentenced defendant to 116 to 149 months imprisonment.

Defendant appeals.

## II. Defense of Withdrawal

[1] In his first argument, defendant contends that the trial court erred by denying his request that the jury be instructed on the defense of withdrawal. We disagree.

## A. Standard of Review

"A trial court must give a requested instruction that is a correct statement of the law and is supported by the evidence. The trial court need not give the requested instruction verbatim, however; an instruction that gives the substance of the requested instructions is sufficient." *State v. Connor*, 345 N.C. 319, 328, 480 S.E.2d 626, 629 (internal citations omitted), *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997). Where the defendant's requested instruction is not sup-

---

1. During the incident, Garnett's dog was killed by two stray bullets.

ported by the evidence, the trial court may properly refuse to give it. *State v. Rose*, 323 N.C. 455, 459, 373 S.E.2d 426, 429 (1988).

### B. Analysis

Defendant was tried for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury under the theory of acting in concert.

> If "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) (quotation and alteration omitted). Once an individual has joined in a purpose to commit a crime, it is possible for him to withdraw under certain circumstances:

> Where the perpetration of a felony has been entered on, one who had aided or encouraged its commission cannot escape criminal responsibility by quietly withdrawing from the scene. The influence and effect of his aiding or encouraging continues until he renounces the common purpose and makes it plain to the others that he has done so and that he does not intend to participate further.

*State v. Spears*, 268 N.C. 303, 310, 150 S.E.2d 499, 504 (1966) (citations omitted); *State v. Wilson*, 354 N.C. 493, 507-08, 556 S.E.2d 272, 282 (2001), *disavowed in part by State v. Millsaps*, 356 N.C. 556, 567, 572 S.E.2d 767, 775 (2002). Any withdrawal by a defendant may not be done silently in his own mind without any outward manifestation or communication to the other perpetrators. *Wilson*, 354 N.C. at 508, 556 S.E.2d at 282.

In the instant case, defendant submitted a written request for a jury instruction on withdrawal to the trial court. Defendant argues that he "renounced the common purpose and made it clear to Bishop and Thompson that he did not plan to participate any further." Defendant's argument is misplaced.

In his statement to the police, defendant stated:

> It was previously decided that I would open the door. I went to the house (1422 Wyldewood, Apt. C1) and opened the glass storm

door. I stepped to the side and said that I did not want to do this but Jarrett (Thompson) said, Come on man, ain't nobody coming. You ain't got to do nothing, just kick the door. So I kicked the door two times but it didn't open. It just cracked. I panicked and ran back to the car. I was running. I turned around and I saw the door open. I heard a kicking sound before I turned around.

Defendant was waiting in the vehicle when he heard gunshots coming from inside of the residence. Bishop and Thompson returned to the vehicle and stated, "[W]e got him."

By his own statement, defendant completed his role in the home invasion as previously agreed upon with Bishop and Thompson. Defendant exited the vehicle, put on a pair of rubber gloves, walked up to the storm door, opened it, and kicked the door twice. The fact that he expressed some hesitancy to participate in the crime before he kicked the door is of no consequence. *See State v. Martin*, 309 N.C. 465, 481, 308 S.E.2d 277, 287 (1983) (holding that the defendants' hesitancy to participate in the robbery did not constitute a withdrawal where they subsequently agreed that the other individuals would enter the store while they sat outside the premises or circled the block waiting for them to commit the crimes). Defendant did not cease his participation in the crime, but rather completed his assigned task.

Defendant also argues that he communicated his withdrawal by physically leaving the scene and returning to the getaway vehicle for the remainder of the incident. We note again, that at that particular time, defendant had joined the common purpose and completed his role in the crime. Further, defendant failed to verbally communicate any intent to withdraw to Bishop and Thompson when he returned to the vehicle.

Because there was no evidence to support the requested instruction on withdrawal, the trial court did not err by denying defendant's request. *Rose*, 323 N.C. at 459, 373 S.E.2d at 429.

This argument is without merit.

### III. Jury Instructions

[2] In his second argument, defendant contends that the trial court erred in its jury instructions on first-degree burglary because it failed to instruct jurors of their duty to return a verdict of not guilty if the State failed to meet their burden beyond a reasonable doubt. We disagree.

**STATE v. WRIGHT**

[210 N.C. App. 697 (2011)]

## A. Preservation of Error

Defendant failed to object to the trial court's instructions on first-degree burglary. Generally, when a defendant fails to object to the jury instruction at trial, his challenge is subject only to plain error review. *State v. Maready*, 362 N.C. 614, 621, 669 S.E.2d 564, 568 (2008). However, our Supreme Court has created certain exceptions to this rule. In *State v. Keel*, 333 N.C. 52, 423 S.E.2d 458 (1992), the Court held that where the trial court agreed to give a specific instruction requested by the State, and defense counsel had no objection, that the issue was preserved for appeal under Rule 10(b)(2) of the Rules of Appellate Procedure. *Id.* at 56-57, 423 S.E.2d at 461. The Court reasoned:

> Because the State requested this instruction, and the trial court agreed to give it, the defendant's counsel had no reason to make his own request for this instruction. The State's request, approved by the defendant and agreed to by the trial court, satisfied the requirements of Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and preserved this question for review on appeal.

*Id.* (citations omitted). To the contrary, where a party makes a *general* request, without giving specific suggested language, and the defendant fails to object to the instruction given, the issue is not preserved for appeal and is reviewed only for plain error. *State v. Allen*, 339 N.C. 545, 554-55, 453 S.E.2d 150, 155 (1995), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 676, 483 S.E.2d 396, 414 (1997). This is because the trial court "never had the opportunity to cure any perceived errors in the instructions" and "[u]nder these circumstances, the spirit and purpose of Rule 10(b)(2) are not met." *Id.*

In the instant case, the trial court advised counsel of the pattern jury instructions it intended to give to the jury. Neither the State nor defense counsel made a specific request for jury instructions on first-degree burglary. Further, defendant failed to object to the instruction when it was read to the jury. After the trial court charged the jury, both the State and defense counsel were asked whether they had "any requests for any additions or deletions or modifications to the jury instructions" pursuant to Rule 21 of the General Rules of Practice for the Superior and District Courts. Defense counsel replied, "Nothing from the defense, Your Honor." Therefore, defendant's assignment of error is subject only to plain error review on appeal.

> Plain error has been defined as " *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice can-

not have been done.' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (citation omitted), *cert. denied*, 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d 513 (1982)). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79.

*Maready*, 362 N.C. at 621, 669 S.E.2d at 568.

## B. Analysis

Rule 10 of the North Carolina Rules of Appellate Procedure provides that "[i]n criminal cases, an issue that was not preserved by objection noted at trial . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) (2010). Defendant failed to "specifically and distinctly" contend that the trial court's jury instructions on first-degree burglary amounted to plain error. Therefore, this issue has been waived on appeal and is dismissed. *State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 58 (2008).

Even assuming *arguendo* that counsel had properly preserved this issue for appeal, the trial court's jury instructions do not rise to the level of plain error. "It is well established that 'the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct.' " *State v. Hornsby*, 152 N.C. App. 358, 367, 567 S.E.2d 449, 456 (2002) (quotation omitted), *disc. review denied*, 356 N.C. 685, 578 S.E.2d 316 (2003). The trial court instructed the jury on first-degree burglary as follows:

> The defendant has been charged with first-degree burglary, which is breaking and entering the occupied dwelling house or sleeping apartment of another without his consent in the nighttime with the intent to commit murder.
>
> For you to find the defendant guilty of this offense, the State must prove six things beyond a reasonable doubt.
>
> First, that there was a breaking and an entering—and an entry by the defendant.

Second, that it was a dwelling house or sleeping apartment that was broken into and entered.

Third, that the breaking and entering was during the nighttime.

Fourth, that at the time of the breaking and entering, the dwelling house or sleeping apartment was occupied.

Fifth, that the owner or tenant did not consent to the breaking and entering.

And, sixth, that at the time of the breaking and entering, the defendant intended to commit murder within the dwelling house or sleeping apartment.

Murder is the killing of another living human being with malice.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant broke into and entered an occupied dwelling house or sleeping apartment without the owner's or tenant's consent during the nighttime, and at that time intended to commit a murder therein, it would be your duty to return a verdict of guilty of first-degree burglary.

If you do not so find or have a reasonable doubt as to one or more of these things, *you will not return a verdict of guilty of first-degree burglary.*

(Emphasis added.)

It appears the trial court utilized N.C.P.I.—Crim. 214.10 to charge the jury on first-degree burglary. This instruction includes instructions for the lesser offenses of second-degree burglary, felonious breaking and entering, and nonfelonious breaking and entering. Because none of the lesser-included offenses were applicable in this case, the trial court stopped the instruction after giving the mandate for first-degree burglary. However, the trial court failed to add at the end of the mandate that "it would be your duty to return a verdict of not guilty." We have held that the failure to give the final not guilty mandate constitutes error. *State v. McHone*, 174 N.C. App. 289, 297, 620 S.E.2d 903, 909 (2005), *disc. review denied*, 362 N.C. 368, 628 S.E.2d 9 (2006).

Defendant cites *McHone* for the proposition that "[t]elling the jury 'not to return a verdict of guilty' . . . does not comport with the necessity of instructing the jury that it must or would return a verdict

of not guilty" if the State failed to meet their burden beyond a reasonable doubt. *Id.* at 297, 620 S.E.2d at 909 (emphasis omitted).

In *McHone*, this Court considered three different factors in determining whether the trial court committed plain error in its instructions to the jury, none of which are present in this case. First, this Court considered the jury instructions on first-degree murder in their entirety. In *McHone*, the defendant was tried for first-degree murder under two theories: premeditation and deliberation, and the felony murder rule. *Id.* The trial judge instructed the jury that if it did not find the requisite malice, premeditation, and deliberation, it " 'would not return a verdict of guilty of first-degree murder on the basis of malice, premeditation, and deliberation' and must then consider whether the killing was done consistent with the requirements of the felony murder rule." *Id.* The trial court also instructed the jury that they would not return a verdict of guilty of first-degree murder under the felony murder rule if the State failed to meet one or more elements of felony murder. *Id.* The trial court failed to provide a not guilty mandate at the close of its instructions for murder. *Id.* This Court held that "[t]he instruction, then, in the absence of a final not guilty mandate, essentially pitted one theory of first degree murder against the other, and <u>impermissibly suggested</u> that the jury should find that the killing was perpetrated by defendant on the basis of at least one of the theories." *Id.*

Second, this Court considered the content and form of the first-degree murder verdict sheet. *Id.* The verdict sheet only provided a space for an answer to "Guilty of first-degree murder?" *Id.* The verdict sheet did not provide an option for "not guilty." *Id.* at 298, 620 S.E.2d at 909. We noted that the trial court had once again failed to inform the jury that it was authorized to return a not guilty verdict. *Id.*

Third, this Court considered the instructions and verdict sheet for the other charge in that case, armed robbery and its lesser-included offense larceny. *Id.* After instructing the jury on the elements of these crimes, the trial court did provide a not guilty mandate as to these offenses. *Id.* We also noted that the content and form of the verdict sheet on these offenses included a space for a not guilty verdict. *Id.* We stated that the presence of a not guilty final mandate and the content of the verdict sheet "likely <u>reinforced</u> the suggestion that defendant must have been guilty of first degree murder on some basis[.]" *Id.*

In *McHone*, this Court's plain error analysis centered upon the fact that the trial court "impermissibly suggested that the defendant must have been guilty of first degree murder on some basis." *Id.* at 299, 620 S.E.2d at 910. This Court concluded that the jury instructions in that case constituted plain error. *Id.* This conclusion was "based not only on the importance of the jury receiving a not guilty mandate from the presiding judge, *but also on the form and content of the particular verdict sheets utilized in this case.*" *Id.* (emphasis added).

In the instant case, there was nothing that would support the proposition that the trial court impermissibly suggested that defendant must be guilty of first-degree burglary. The trial court gave the jury a choice of returning a verdict of guilty of first-degree burglary or not returning a verdict of guilty of first-degree burglary if they had a reasonable doubt as to one or more of the elements of the crime. There were no alternative theories that the jury could consider or lesser-included offenses. The verdict sheet for first-degree burglary provided a space for the jury to check "Guilty of First Degree Burglary" or "Not Guilty." Likewise, the verdict sheet for the other offense in this case also included a space for a verdict of guilty or not guilty.

While it was error for the trial court to fail to deliver the final not guilty mandate, this error does not rise to the level of plain error.

NO ERROR IN PART; DISMISSED IN PART.

Judges STEPHENS and HUNTER, JR. concur.